Henry *against* Norwood.

4 w 347
178__532

By the fourth section of the supplementary arbitration act of March 1820, it is the duty of the party who enters the rule, to serve a copy of the record of the appointment upon the adverse party, if he reside in the county, although his attorney attends when the appointment is made.

In an action for a libel, if the plaintiff give in evidence parts of the libel not set out in the declaration, for the purpose of showing malice, it is competent for the defendant to give evidence of the truth of such parts, although he has not pleaded a justification.

In an action for a libel it is competent for the defendant to prove that the general character of the plaintiff is bad.

ERROR to the common pleas of *Beaver* county.

David Norwood against William Henry.   Action for a libel.

The defendant entered a rule of arbitration : the attorneys of the respective parties appeared and made choice of arbitrators, and agreed to the time and place of meeting.   The arbitrators met, the defendant appeared, but the plaintiff did not, and an award was made for

[Henry v. Norwood.]

the defendant. On motion of plaintiff's counsel, the court set aside the award at the cost of the defendant, on the ground that a copy of the appointment of the arbitrators was not served on the plaintiff, as required by the fourth section of the act of 28th of March 1820.

The plaintiff's declaration set out but a part of the libel made by the defendant; but the whole of it was given in evidence to show malice on the part of the defendant in publishing the other parts declared on. The defendant then offered to give evidence of the truth of those parts of the libel thus read by the plaintiff and not declared on. This was objected to on the ground that the defendant had not pleaded a justification, and the court rejected the evidence and sealed a bill of exceptions. The defendant also offered to prove that the general character of the plaintiff was bad. This was also objected to and the evidence was rejected.

The errors assigned were: that the court erred in setting aside the report of the arbitrators, and in rejecting the defendant's evidence as contained in the two bills of exception.

*Burke* and *Watts,* for the plaintiff in error, cited, 2 *Stark. Ev.* 877; *Bull. N. P.* 9; 1 *Binn.* 92.

*Agnew,* for the defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—Under the eighth section of the act of 1810 regulating arbitrations, where both parties, either by themselves, their agents or attorneys, attended to the appointing of the arbitrators before the prothonotary, it was not required of the party entering the rule that he should give or serve a certified copy of the record of the appointment upon the adverse party in any way whatever—either upon himself, his agent or attorney. If the latter, however, did not attend, either in person, or by his agent or attorney, at the time and place of appointing the arbitrators, it was then required that a certified copy of the record of the appointment of the arbitrators, containing their names, together with the place and time fixed for their meeting, should be served upon him, if living within the county; otherwise upon his agent or attorney. But it is evident, from the fourth section of the supplementary act of the 28th of March 1820, that the legislature intended to make some alteration in regard to this matter; otherwise the fourth section would not have been introduced and passed. For it being substantially, if not identically the same with that part of the eighth section of the original act, which requires and points out the manner in which the certified copy of the record of the appointment of the arbitrators shall be served, omitting the following clause, "where such party has not attended by himself, his agent or attorney on the day on which the arbitrators were chosen or appointed," goes to show pretty clearly that it was intended to make the requisition of serving such certified copy on the party

[Henry v. Norwood.]

in the manner therein prescribed applicable to all cases, as well where he attended to the appointing of the arbitrators as where he did not. We therefore think, upon its being shown that the plaintiff below resided within the county, and that no copy of the appointment of the arbitrators was served upon himself, that the court were right in setting aside the award of the arbitrators.

The second error assigned is, in the court's rejecting evidence offered by the defendant below; first, for the purpose, as his counsel allege, of proving the truth of certain parts of the libellous writing not set forth by the plaintiff in his declaration but read in evidence by him to show malice on the part of the defendant in publishing the other parts declared on; and secondly, to show that the general character of the plaintiff was bad.

So far as the evidence offered tended merely to prove the truth of those parts of the libel read by the plaintiff but not introduced by him into his declaration, it certainly ought to have been received; because as to them the defendant had no opportunity of justifying. 2 *Stark. Ev.* 465, *Phil. ed.* 1834. But how much of the evidence offered was of this character does not distinctly appear, owing to the careless manner in which the bills of exception have been drawn up. It is certain, however, that it was not all so; for the depositions of Jane Duff and Fanny Caldwell, that part of James Anderson's testifying to the free use of ardent spirits, &c. in the session of the plaintiff's congregation when he was moderator, and the deposition of James Miller, except that part of it which relates to the plaintiff's general character, *tended* strongly to prove the truth of those parts of the libel selected by the plaintiff and set forth in his declaration as the ground of his complaint; and were, therefore, not admissible evidence under the general issue. To have received this part of the evidence would have been a violation of the rule established in Underwood *v.* Parkes, 2 *Stran.* 1200, where it was agreed by all the judges, that evidence of the truth could not be admitted either in bar of the action or in mitigation of damages, unless it were pleaded. The propriety of this rule is most obvious, for as Mr Starkie very justly observes, if facts *tending* to prove the truth of the charge were to be admitted in mitigation of the punishment, how would it be possible to draw the line and stop short of actual conviction? 2 *Stark. Ev.* 470, *Phil. ed.* 1834. It may be too, but not having a copy of the entire libel on our paper books, we cannot say it was so, that some of the evidence offered and rejected by the court tended to prove particular facts or circumstances injurious to the character of the plaintiff, not contained in any part of the libel: if so, the court was right in rejecting it; because, although the plaintiff may be considered as having put his general character in issue and therefore bound to sustain it or abide the consequences, yet it would be unreasonable to suppose that he could, or to require that he should, come prepared to encounter and refute every act or appearance of indiscretion or crime that might be imputed to him in

[Henry v. Norwood.]

the whole course of his life, without any previous notice given to him that such charges were intended to be made. And besides, even if a plaintiff should be guilty of one offence, that furnishes no reason or justification for falsely and groundlessly charging him with another; nor ought it to be considered any extenuation of the conduct of a slanderous defendant.

Something was also said on the argument in regard to the admissibility of evidence tending to prove that the charges contained in the libel and set forth in the declaration were in circulation and currently reported to be true before they were published by the defendant as a libel. The admission of such evidence, even in cases of verbal slander or defamatory words spoken, ought not perhaps to be sanctioned, unless under pretty narrow restrictions; for in many such cases it may be impossible to trace the slanderous report to its first author, and in every case of the kind the defendant is as likely to be the author as any other. And why should not the publisher of a slander be held responsible and punished as the author, unless he shows clearly who the author is, and that when he spoke the slanderous words he mentioned the author's name in such a way as to show that he was a witness for the party slandered against the slanderer, and not participating with him in it? But it is obvious, for at least two reasons, that the rule, even thus qualified and restricted, ought not to afford a protection to a party who has heard defamatory words spoken of another, if afterwards he commit them to writing or to print, and publish them in this form, without some legal excuse for doing so, notwithstanding he gives the author's name along with it. First, because the words spoken, though tending to bring the person of whom they are spoken into contempt or ridicule among his acquaintances, may not be actionable, but may become so by committing them to writing or print, and publishing the same; so that if it were to be held a good defence for the writer or printer and publisher in such case, that he disclosed in his written or printed publication the name of the person who communicated the same to him *ore tenus,* it is perfectly clear that the person slandered must be without redress, though greatly injured. And secondly, because reducing the slander to writing or print, and sending it forth into the world in this form, not only gives to it a much wider spread, but a character vastly more imposing on the credulity of mankind, and one that may occasionally commend itself to the most wary. In short, the injury produced, both to the public and the individual, by a written or printed slander, is so much greater than that generally occasioned by a verbal one, that they may be considered as belonging almost to different classes of private wrongs.

With respect to the evidence offered for the purpose of showing that the general character of the plaintiff was bad, we think it ought to have been received, and that the court below were wrong in rejecting it. 2 *Stark. Ev.* 469, 470, *Phil. ed.* 1834, *and the authorities referred to in the notes.* That such evidence is admissible may

[Henry v. Norwood.]

be clearly deduced from the ground itself upon which the plaintiff must rest his claim to damages. In his declaration he complains, that being of good character as a minister of the Gospel, and also as a citizen, and having sustained the same until the publication of the libel by the defendant, he thereby received great injury in his good name so previously had and enjoyed. Now it is apparent that the injury here complained of and alleged to have been produced by the publication of the libel, is the loss of his good character; and hence it becomes all important, as well as pertinent to the issue, to inquire whether or not the plaintiff had a good character, such as he has averred in his declaration; for if he had it not, it was impossible in the nature of things that he could either lose or be deprived of it. The testimony was also admissible for the purpose of establishing a measure of justice between the parties; because the extent of the injury, if any, which the plaintiff had sustained, depended, in some degree at least, upon the goodness or the badness of his general character before the publication of the libel; and as the amount of compensation ought to be commensurate with, and bear some proportion to, the extent of the injury, it was altogether proper for the jury, who were to assess the amount, to know what standing and character the plaintiff had in society anterior to the publication of the libel.

Judgment reversed, and a *venire de novo* awarded.