## Brooks Sayre *vs.* Anthony L. Sayre.

In an action for slander, evidence of the plaintiff's general bad character at the time of the alleged slander is admissible in mitigation of damages. The evidence is not to be restricted to those particular traits of character involved in the slanderous words.

Error to the Essex Pleas.

The action was originally commenced in the Court of Common Pleas of the County of Essex, by Anthony L. Sayre, the defendant in error, against Brooks Sayre, for slander. The slanderous words set out in the declaration imputed to the defendant the crime of larceny. The defendant pleaded the general issue. The only error assigned was founded on a bill of exceptions, sealed on the trial of the cause, as follows:

Which said issue, in manner aforesaid joined between the said Anthony L. Sayre and Brooks Sayre, afterwards, to wit, at the term of January, in the year of our Lord eighteen hundred and fifty-four, before the judges of the Court of Common Pleas of the county of Essex, holden at Newark, in and for said county of Essex, came on to be tried, at which day before the said court came, as well the said Anthony L. Sayre as the said Brooks Sayre, by their respective attorneys aforesaid; and the jurors of the jury aforesaid, whereof mention is within made, being called, likewise came and were sworn to try the issue aforesaid, in manner aforesaid joined; and thereupon said Brooks Sayre, by his counsel, offered to prove, in mitigation of the damages sought to be recovered of him by Anthony L. Sayre on account of the alleged speaking and publishing of the alleged slanderous words in said declaration mentioned, that the general character and reputation of the said plaintiff in the community in which he, the said plaintiff, before and at the alleged time of the alleged speaking and publishing of the alleged slanderous words lived, was bad, whereupon the counsel on the part of the said Anthony L. Sayre interposed, and insisted that the said evidence, so offered to be given by the said Brooks Sayre to the jurors aforesaid, should be restricted and confined by the court to inquiring into the general character of the said plaintiff as to honesty and integrity, and that no evidence of the general bad character of said

plaintiff should be or was by law admissible, except in so far as the same related to his integrity in his dealings, and his honesty and innocence or guilt of larceny, or other crime of like character, and that evidence of the general character of said plaintiff, as to other matters than those which formed or were kindred to the subject matter of the slander charged in the declaration, was not good or admissible in law on the trial of said cause, and that the same ought not and could not by law be given to said jury in mitigation of damages as aforesaid ; and said counsel of said Anthony L. Sayre thereupon prayed said court to exclude and overrule the said testimony, so as aforesaid offered to be given in mitigation as aforesaid, except so far as aforesaid.   And the said court thereupon did permit the said defendant to give evidence touching the general bad character of the said plaintiff in respect of honesty and integrity, and the want thereof by him, and in respect of his innocence or guilt of larceny, or other crime of like character, but did exclude and overrule the giving of any evidence by the said defendant of the said plaintiff's general bad character in other respects, or as to other matters than those which formed or were kindred to the subject matter of the slander charged in the plaintiff's declaration, and would not suffer the same to be given and produced to said jury for their consideration.   Whereupon the counsel of said Brooks Sayre, conceiving that by the law of this state the matter so as aforesaid offered to be given in evidence was admissible, and that the same ought, by said court, to have been permitted to go before said jury for their consideration, in mitigation as aforesaid, made their exception to said exclusion and overruling of said testimony, and prayed that the said court would set their hands and seals to this bill of exceptions, containing the matter so offered to be given in evidence as aforesaid, according to the form of the statute in such case made and provided ; and there-

upon the judges of said court before whom said cause was tried have set their respective hands and seals thereto, according to the form of the statute in such case made and provided, at the city of Newark, the twenty-first day of January, eighteen hundred and fifty-four.

The cause was argued before the CHIEF JUSTICE, and ELMER, POTTS, and VREDENBURGH, Justices.

*Runyon* (with whom was *Bradley*), for plaintiff in error, cited 2 *Greenl. Ev.* § 424; 8 *Wend.* 602; 4 *Denio* 509; *Anthon's N. P.* 185; 2 *Wharton* 316; 3 *Hammond* 270; 6 *Gill & J.* 413; 3 *Mass.* 546; 8 *Cowen* 214; 2 *Bibb* 21; 1 *Chipman* 145; 6 *New Hamp*, 413; 2 *Nott & M.* 511; 7 *Ala.* 574; 4 *Scam.* 43; 2 *Stark. on Slan.* 88, 90, *notes;* 1 *Maule & Sel.* 284; 2 *Camp.* 251; *Holt's Cases* 307; 2 *Stark. on Slam.* 92, *note;* 11 *Price* 235; *Cooke on Def.* 160. 163; 2 *Stark. Ev.* 364–9, " *Character;*" *Ibid.* 878, " *Libel and Slander;*" 1 *Penn.* 169; 1 *Phil. & Amos* 489, *note;* 6 *Mass.* 514.

*Parker*, contra, cited *Cooke on Def.* 160; 1 *Johns R.* 45; 2 *Stark. on Slan.* 89, *note* 94; 3 *Conn.* 466; 6 *Mass.* 514; 1 *Greenl. on Ev.* § 55; 11 *Humphrey* 608; 3 *Kerr* 443; *Swift's Ev.* 140; *Root* v. *King,* 7 *Cowen* 613; *Bowen* v. *Hall,* 20 *Vermont* 232.; 3 *Mass.* 551.

The CHIEF JUSTICE.    In an action for slanderous words charging the plaintiff with larceny, the defendant, on the trial, offered in evidence, in mitigation of damages, the general bad character of the plaintiff before and at the time of the alleged slander.    The court admitted the evidence, so far as it related to the plaintiff's character for honesty and integrity, but rejected evidence of his general bad character.    This constitutes the ground of error.

Two questions are necessarily involved in the determination of the error assigned, *viz.*: 1. Whether in an action

of slander, evidence of the plaintiff's general bad character is admissible in mitigation of damages. 2. Whether such evidence, if admissible, is to be restricted to those particular traits of character involved in the slanderous words.

Evidence touching the plaintiff's character, in mitigation of damages, may be offered to show that the defendant merely repeated rumors that were in circulation, and that the slander was not wantonly originated by him; with the view of showing the *animus* with which the words were spoken, in order to diminish the extent, or to qualify the character of the defendant's malice, and thereby to diminish the damages. With this view the evidence was offered, and held by this court to be admissible, in *Cook* v. *Barclay*, 1 *Penn.* 169, and, with the same view, it has been frequently admitted in the English courts. Or the evidence may be offered to show that the plaintiff, being a man of bad character, is therefore entitled to less damages, on the ground that a person of disparaged fame *is* not entitled to the same measure of damages as one with an unblemished reputation. In this last aspect, the evidence in the present case is offered, *viz.*, to show the value of the thing alleged to be injured.

Regarding it as a mere question of value, aside from technical principle, it is difficult to perceive on what ground the evidence can be excluded. The plaintiff brings his action to recover damages for an injury to his reputation; to the estimation in which he is held among his neighbors and acquaintances. This is the *gravamen* of the complaint; for this the jury are to assess damages. Upon what principle are these damages to be assessed; upon what scale are they to be graduated, except in reference to the value of the article injured?

The law assumes a good character to be of equal value to every man. It presumes that every man is " of good name and fame " until the contrary is proved. The plaintiff, therefore, is not put upon proof of his good character,

or of its precise value. But is not the defendant entitled to show that the plaintiff's character is not good, that his reputation has sustained but little injury, and that, consequently, he is entitled to but small damages by way of reparation. If, in estimating damages, there be any distinction between the best and the worst character, the jury ought to be furnished with the means of making a proper estimate. To exclude the evidence is either to affirm that in the admeasurement of damages in actions of slander, there is no distinction between the most exalted character and the most debased, or, admitting the distinction, to maintain that the jury must form their estimate of character without evidence.

The defendant cannot, under the general issue, give in evidence the truth of the words spoken, because this is matter of justification, and constitutes a complete defence to the action. It is excluded, therefore, from being offered in evidence under the general issue by virtue of a technical rule of pleading, which requires matters of justification to be pleaded in bar of the action.

The question, in this aspect, has been much discussed in the American courts, but seems never to have been presented in Westminster hall prior to the year 1813. An examination of the authorities will show that, with few exceptions, the subject has not been viewed in this light either by the bench or bar of Great Britain. The analogies of the common law in regard to personal rights, seem strongly to favor the entire exclusion of the evidence in this aspect. To things, as the subjects of dominion or property, the law affixes a pecuniary value; but strictly personal rights, the *jura personarum*, the law measures by no such standard. It has no scale by which it can measure the comparative value of life, liberty, limbs, health, or reputation to different individuals. In an action for false imprisonment, the defendant cannot show that cofinement is a benefit to the plaintiff, or that liberty is of no

value to him, because he abuses it. In an action for assault and battery, the defendant cannot, by way of mitigating damages, prove that the plaintiff's physical condition was bad, or show that a limb that was broken was defective in physical strengrh or symmetrical proportion. In actions for injuries to the health, it cannot be shown that the plaintiff's health was good or bad at the time of committing the injury. So in actions for injuries to the reputation, the general averment of the plaintiff's good name is not traversable. The plaintiff offers no evidence to show its precise standing or value. The law annexes a value irrespective of the comparative standard by which character is ordinarily mersured ; and hence the apparent anomaly of the common law principle, that in actions for slander the general character of the plaintiff is not put in issue. It is in issue only so far as it is made so by a special plea of justification. *J' Anson* v. *Stuart* 1 *T. R.* 748.

Nor would the defendant in an action of slander be permitted to show that the plaintiff's character was so pure that the voice of slander could not sullly it, or that the defendant was so utterly unworthy of credit that the plaintiff's reputation was not injured. The truth is, that in this entire class of cases, for all injuries to the *jura personarum*, the ancient common law appears to have regard to the nature and character of the wrong, rather than to the precise degree of injury inflicted in the individual case. And this will explain the otherwise incomprehensible fact, that although the action of slander is of ancient origln and of frequent occurrence, no trace of the evidence of the plaintiff's character, as a measure of its pecuniary value, either admitted or offered, will be found in the English books before the commencement of the present century.

In *Smithies* v. *Harrison*, 1 *Ld. Ray,*727(13 *Will.* 3), Lord Holt ruled, that in case for words which imported the committing of adultery with Jane at Stile, the defendant

in mitigation of damages, might give in evidence that the plaintiff did commit adultery with Jane at Stile, but not with any other woman. *S. C.* 12 *Viner's Ab., "Evidence," I, b.*

The same practice was adopted the following year, apparently without question, in *Brown* v. *Gibbons,* 2 *Ld. Ray.* 831, (1 *Anne*). These cases merely maintain the doctrine (long since exploded), that the truth may be given in evidence in mitigation of damages.

In *Dennis* v. *Pawling,* before Baron Price, in 1716, briefly reported in 12 *Viner's Ab.* 159, *"Evidence"I, b,* it is said, that, " in an action for words, the baron would not allow anything to be given in evidence which tended to justify the words, though in mitigation of damages, nor would he allow any particular credit to be given to the plaintiff; but if the defendant have a mind to examine to this, the question must be asked in general." The meaning, though sufficiently obscure, seems to be, that the truth shall not be given in evidence in mitigation of damages; that the plaintiff shall not give evidence in support of his good character, or, as it may be rendered, the defendant shall not give evidence of particular facts, but shall only give evidence of the plaintiff's general character. The case, whatever may be its real meaning, contains no allusion to the admission of evidence in the light in which it is now offered.

In *Knobell* v. *Fuller, Peak's Ev,,* by Norris, *Appendix* 32 (1797), Eyre, C. J., in an action for libel, admitted evidence to show, that although the defendant had not been convicted of the offence imputed in the libel, there were strong circumstances of suspicion against him. The evidence was admitted, as showing a want of malice in the defendant.

In *Rodriguez* v. *Tadmire,* 2 *Esp. N. P. Cases* 721 (1799), Lord Kenyon, in an action for malicious prosecution, permitted the question to be asked, whether the plaintiff was

not a man of notoriously bad character. The defence was grounded on probable cause, and the evidence was admitted to show the existence of a probable cause for the prosecution, and to disprove the existence of malice.

In *Rex* v. *Waring*, 5 *Esp.* 13 (1803), in an action for words, Lord Alvanley admitted the plaintiff to prove antecedent good character, saying, that when the words charged a crime or conduct injurious to the plaintiff's reputation (which necessarily includes all slander), it is allowable to receive evidence of antecedent good character. The precise purpose for which the evidence was admitted does not appear; but, from contemporaneous cases, it may be inferred that it was admitted under the idea of sustaining the averments of good character contained in the declaration.

In the *Earl of Leicester* v. *Walter*, 2 *Campbell* 251 (1809), the defendant, in an action for libel, offered to prove that, before and at the time of the publication of the libel, there was a general suspicion of the plaintiff's character and habits; that it was generally rumored that such a charge had been brought against him, and that his relations and acquaintances had, on this ground, ceased to visit him. The admission of the evidence was urged on the broad ground, that the value of the thing lost or injured must be inquired into, and that it directly met the averments of the declaration. The evidence was admitted, and on summing up, the Chief Justice, Sir James Mansfield, said: "The jury would consider, in assessing the damages, whether the reports which had been proved were sufficient to show that the plaintiff could receive but little injury." This is the first case to be found in the English books in which the doctrine of admeasuring damages in reference to the plaintiff's previous character is distinctly propounded, though it had previously been much discussed in the American courts.

In *Williams* v. *Callender*, 1 *Holt* 299, *n.* (1810), Lord

Ellenborough said, that though there was no justification on the record, the defendant might give in evidence somewhat of the real character of the plaintiff, and show that it was not unblemished and entire.

In *Snowden* v. *Smith*, 1 *Maule & Sel.* 286, *note a* (1811), Chambre, J., overruled similar evidence, on the ground that the defendant had justified.

In *Moor's case*, 1 *Maule & Sel.* 284, (1813), the defendant offered to prove, in mitigation of damages, that there were reports in the neighborhood that the plaintiff had been guilty of similar practices to those imputed by the defendant. The evidence was admitted on the authority of *The Earl of Leicester* v. *Walter*, the court saying that it was evidence to contradict the plaintiff's allegation that he was of good fame, and that the speaking of the words occasioned injury to it. The plaintiff thereupon submitted to a nonsuit. On motion for a new trial, it was insisted that the evidence was improperly received to contradict that which was matter of inducement merely and immaterial, and which the plaintiff was not bound to prove. The whole Court of King's Bench occurred in denying the motion. Lord Ellenborough said the evidence must have been received in mitigation of damages. It was so in the case of *The Earl of Leicester* v. *Walter*. And certainly a person of disparaged fame is not entitled to the same measure of damages with one whose character is unblemished; and it is competent to show that by evidence.

In *King* v. *Perrott*, 1 *Holt* 299, *n.*, *Holt's Law of Libel*, 1st *Am. ed.* 279 (1814), it is said that something short of the truth, and to show a probable cause of speaking or writing the defamatory words, may be given in evidence under the general issue. "So far," says Lord Ellenborough, "I assent to the case of *The Earl of Leicester* v. *Walter*, and no farther."

In *Kirkman* v. *Oxley*, 1 *Phil. Eve.* 147, *n.* 4, (1815), Heath, J., allowed the defendant, who had justfied in an action

for words, to give evidence of the plaintiff's general bad character in mitigation of damages.

In *Newsam* v. *Carr*, 2 *Stark. R.* 69 (1817), in an action for malicious prosecution, evidence being offered that the plaintiff was a suspicious character, and objection being made, Baron Wood overruled the objection, saying, that in actions for slander such evidence was admissible for the purpose of mitigating the damages.

In *Waithman* v. *Weaver*, *Dowl. & Ry. N. P. Cases* 10 (1822), facts were offered in evidence short of a complete justification, to rebut the presumption of malice. Abbott, C. J. overruled the evidence, saying it was proposed not to give in evidence rumors, as in *Leicester* v. *Walter*, but facts, and there is a vast difference between rumors and facts.

These cases, extending from 1809 to 1822, show that during that period at least, the principle of the common law, that personal injuries admit of no admeasurement by any standard of pecuniary value, was, in regard to personal character in actions for slander, shaken, and in practice disregarded by the English courts. Although the evidence was rarely offered precisely in that aspect, yet it was repeatedly admitted, upon the ground that a person of disparaged fame is not entitled to the same measure of damages with one whose character is unblemished. The must accurate elementary writers stated the rule as settled, that the defendant may, in actions for defamation, give evidence of the plaintiff's general character in mitigation of damages. 1 *Phil Ev.* (3d *Am. ed.*) 146 ; 2 *Stark. Ev.* (6th *Am. ed.*) 216, 469.

In *Jones* v. *Stevens*, 11 *Price* 235 (1822), the Court of Exchecquer held, that in actions for libel, general evidence of the plaintiff's bad character was irrelevant and inadmissible, either to contradict the averments of good character, contained in the declaration, or in mitigation of damages. And, mainly upon the authority of this decision,

it is said, that in actions for defamation, it appears, according to the later authorities, that general evidence of the plaintiff's good or bad character is irrelevant. 1 *Phil. & Amos. Ev.* 488.

. In *Thompson* v. *Nye*, 16 *Queens B.* 175 (1850), the witness was asked, by defendant's counsel, whether he had not heard from other persons, that the plaintiff was addicted to practices of the kind imputed by the alleged slanderous words. The evidence was overruled, and, on a motion for new trial, the evidence was held to be incompetent, because it was not confined to rumors before and at the time of the alleged slander; the judges expressly declining to express any opinion upon the point, whether, if so confined, the evidence would have been competent.

The case of *Jones* v. *Stevens* is entitled to the more consideration, from the fact that it was fully argued, and the result concurred in by the entire bench. Graham, Baron, in delivering his opinion, said, "On the present occasion, there is a full concurrence of opinion amongst the whole court, that such general evidence of bad character, whether offered on the general issue, or in proof of matter pleaded by way of justification, is not admissible, and principally on the grounds, that a party cannot be expected to be prepared to rebut it; and that if it were received, any man might fall a victim to a combination made to ruin his reputation and good name, even by means of the very action which he should bring to free himself from the effects of malicious slander."

The danger of a combination to ruin the plaintiff's character, by way of defence to an action of slander, however it may exist in theory, in practice is very small. There is no defence in an action of slander more dangerous, and which experienced counsel will venture upon with more caution, than that of assailing the plaintiff's character, either by way of justification or in mitigation of damages; and all experience shows that, except

where the defence is fully sustained, the attempt tends to aggravate, rather than mitigate the damages. Nor is it perceived, while evidence of particular facts is excluded, and evidence of general character alone admitted, why the plaintiff should not be prepared to rebut it. The plaintiff comes into court asking damages for an injury done to his character. Should he not be prepared to rebut evidence showing that his character was as bad before the slander was uttered as afterwards; that his reputation was of little value, and that the damage sustained is but slight? Is there any greater hardship in assailing the general character of the plaintiff, who comes into court seeking a vindication of his character, than there is in assailing the general character of a witness for truth and veracity? The admission of the evidence in either case may, doubtless, lead to individual cases of wrong, but the answer to the objection is, that the ends of justice require that the evidence should be admitted.

This extended review of the English authorities serves to show, that while the admissibility of evidence touching the plaintiff's character in actions for defamation, by way of mitigating damages, has never been fully established in the courts of Westminster, it has been repeatedly recognized and frequently acted upon at *nisi prius*, sometimes by way of depreciating the value of the plaintiff's character, at others in order to show the absence of malice in the defendant.

In the American courts, the authorities are very decided in favor of the admissibility of the evidence, upon the broad ground that a plaintiff is entitled to higher damages for defamation where his previous reputation was good.

Evidence as to the general character of the plaintiff, (says C. J. Parsons) he may at all times encounter, if untrue; and if his character be generally bad, independent of the slander of which he complains, the jury may con-

sider it; for the worth of a man's general reputation among
his fellow citizens may entitle him to large damage for an
attempt to injure it; which he ought not to obtain, if his
character is of little or no estimation in society.   *Wolcott.*
v. *Hall*, 6 *Mass.* 518.   In *Bodwell* v. *Swan*, 3 *Pick.* 378,
the court say, "the general bad character of the plaintiff
may be shown, because he relies upon its goodness before
calumniated, as the principal ground of damages.   A fair
character has been attacked, and the law will repair the mis-
chief by damages; but to a reputation already soiled the
injury is small."

The evidence was repeatedly held to be admissible, upon
this ground, in the American courts before the doctrine was
at all agitated in the English courts.

It was so decided in *Brunson* v. *Lind*, 1 *Root* 154 (1792),
*Austin* v. *Hanshett*, 2 *Root* 148 (1794); *Seymour* v. *Mer-
rills*, 2 *Root* 459 (1795); *Vick* v. *Whitfield*, 2 *Hayw.* 222
(1802).

In *Foot* v. *Tracy*, 1 *Johns R.* 46 (1806), in the Supreme
Court of New York, the bench was equally divided, Kent
and Thompson being in favor of the admissibility of the
evidence, Livingston and Tompkins being opposed to it.
It is worthy of notice that C. J. Kent, before whom the
cause had been tried, on the trial, rejected the evidence;
but on the motion for new trial, he held that he had
erred, and that a new trial should be granted on that
ground.   Mr. Justice Spencer, who heard the argument,
gave no opinion, having been concerned as counsel.   But
in the case of *Springstein* v. *Field* (*Anthon's N. P.* 185),
he declared that he had fully considered the question,
and had no doubt of the admissibility of the evidence.
Although the case of *Foot* v. *Tracy* was not decided,
it may be safely said that few authorities upon either
side of the Atlantic are entitled to more respectful
consideration, than one sustained by the deliberate con-
currence of Kent and Thompson and Spencer.   Since the
case of *Foot* v. *Tracy*, the question has been repeatedly
under consideration in the state of New York, and it has

been uniformly held that the evidence is admissible. *Springstein* v. *Field, Anthon's N. P.* 185; *Paddock* v. *Salisbury*, 2 *Cowen*, 811; *Douglass* v. *Tousey*, 2 *Wend.* 352; *Root* v. *King*, 7 *Cowen* 616, *S. C. in error*; 4 *Wend.* 113; *Hamer* v. *McFarlin.* 4 *Denio*, 509.

The rule is equally well settled in Massachusetts. *Wolcott* v. *Hall*, 6 *Mass.* 518; *Ross* v. *Lapham*, 14 *Mass.* 279; *Bodwell* v. *Swann*, 3 *Pick.* 378; *Commonwealth* v. *Snelling*, 15 *Pick.* 344; *Stone* v. *Varney*, 7 *Metc.* 86.

So in several other states. *Bailey* v. *Hyde*, 3 *Conn.* 463; *Treat.* v. *Browning*, 4 *Conn.* 409; *Henry* v. *Norwood*, 4 *Watts* 347; *Steinman* v. *Mc Williams*, 6 *Barr* 170; *Buford* v. *McLuny*, 1 *Nott & M.* 268; *Sawyer* v. *Eifert*, 2 *Nott & M.* 511; *Dewit* v. *Greenfield*, 5 *Ham.* 225; *Eastland* v. *Caldwell*, 2 *Bibb* 21; *Callaway* v. *Middleton*, 2 *A. K. Marshall* 372; *Lamos* v. *Snell*, 6 *New Hamp.* 413; 1 *Greenl. Ev.* § 55; 2 *Ibid.* § 275, 424.

The ends of justice, no less than the weight of authority, require that the evidence should be admitted. "It cannot be just that a man of infamous character should, for the same libellous matter, be entitled to equal damages with the man of unblemished reputation; yet such must be the result, unless character be a proper subject of evidence before a jury." Admit that a technical rule is seemingly infringed; mere technicalities should never be suffered to defeat the ends of justice.

Where the evidence is introduced to disprove malice in the defendant, by showing that the slander was not invented by him, as in *Cook* v. *Barkley*, 1 *Penn.* 169, the evidence is necessarily confined to the particular trait of character which is the subject of the slander. This, as has already been stated, will be found to be the evidence offered and admitted in a majority of the cases reported in the English books.

But where the evidence is introduced for the purpose of mitigating damages, on the ground that the plaintiff's

reputation has sustained but little injury, the plaintiff's general character, alone, should form the subject of examination. The question is not what may have been his character in any given particular, but what was the estimation in which he was held among his neighbors and acquaintances. An examination of the cases already cited will show that this is the shape in which the evidence is usually admitted.

The evidence, in this aspect, is equally admissible under the general issue, or under a special plea of justification, the design of the evidence being simply to guide the jury in assessing damages. *Hamer* v. *McFarlin*, 4 *Denio* 509; *Stone* v. *Varney*, 7 *Metc.* 86.

The court below having rejected the evidence, the judgment must be reversed, and a *venire de novo* awarded.

ELMER, J. The numerous cases bearing on the question to be decided in this case, referred to on the argument, cannot be reconciled. We must, therefore decide it upon principle. Evidence of the moral character of individuals is admitted in three classes of cases, each of which rests upon peculiar and distinct grounds.

One class of these cases is, where the evidence of character is allowed to afford a presumption that a particular individual has or has not been guilty of a criminal act. In the nature of things, the evidence in this class of cases must be confined to the character in reference to the particular criminal act charged. This is so, because of the great danger and inconvenience of going further, and because a man's good character for veracity or for chastity, forms no ground of presumption, or at best a very slight presumption, that he has or has not been guilty of some other crime. Such a ground of receiving evidence of character can occur in an action of slander only when it has been justified, and the question is, whether the plaintiff was or was not guilty of the crime charged. In the case

before us, the defendant could not have been permitted to prove the defendant's character, to affect the question of his being guilty of the charge made against him, that he had broken open a store and stolen shoes and boots, and he made no such offer. That he was innocent of the crime alleged to have been imputed to him, was admitted by the plea of not guilty, and was not a subject of inquiry.

Another class of cases is, where character may be given in evidence to impeach or confirm the credibility of a witness. There are not wanting respectable authorities, that in these cases the general character of the witness may be inquired into, without confining the questions to his character for truth and veracity. The prevalent and better ruling, however, I think is, that the character for truth and veracity is alone to be questioned. Witnesses brought into courts to testify are entitled to every indulgence consistent with the great object of ascertaining the truth; and to permit their characters to be assailed beyond what is absolutely necessary for that end, would be an intolerable hardship to them, without any corresponding good. Common experience and observation teach us, that a witness may be vicious in some respects, and yet be rather remarkable for a strict adherence to the truth.

The remaining class is, where evidence is admissible to affect the damages, where, in the nature of the case, their amount depends, to some extent, on the character of the parties, or of some third person so connected with the suit as to affect that question. It was in this point of view, that the defendant in this case offered to prove the general character and reputation of the plaintiff. That he might prove his character in reference to the subject matter of the charge against him, slanderously made by the defendant, was admitted by his counsel on the trial and in this court, and was allowed in the court below. Even this seems to be denied by the later English cases, while it is held to be correct by a large number of American cases

referred to by counsel on the argument here. Many of the last mentioned cases seem to go upon the principle, that the plaintiff's general character is involved; although the precise point now made, was discussed in but a few, and in those there is not an uniformity of decision. The cases of *Sawyer v. Eifert,* 2 *Nott & M.* 511, and of *Young* v. *Bennet,* 4 *Scam.* 43, appear to be direct decisions that the general bad character of the plaintiff may be given in evidence; while the cases of *Bell* v *Farnsworth,* 11 *Humphrey* 608, and of *Williston* v. *Smith,* 3 *Kerr's N. B. R.,* appear to be the other way. The true solution of the question must depend upon the grounds on which the damages in slander are to be assessed. If the plaintiff's general character was entitled to influence, the decision of the court below in restricting the evidence was erroneous; if his character for honesty was alone entitled to weight, the decision was correct; while if character was altogether irrelevant, the court was wrong in admitting so much as it did, although, there having been no exception to such ruling, it would not be such an error as will affect the result.

Much diversity of opinion has prevailed in regard to the true grounds upon which damages may be given in actions for *torts.* Admitting, however, for the purposes of the present inquiry, without meaning to assume that this opinion is correct, that punitive or exemplary damages are inadmissible, and that the damages in such cases must be confined to such as will be compensation, recompense, or satisfaction to the plaintiff, for the injury he has actually received from the defendant, and that no facts or circumstances can be proved, on either side, but such as aggravate or mitigate the injury itself; I think it is very clear, that where the injury complained of is one to the reputation of the party, as is the case in slander, the general character of both parties does necessarily affect the injury. The defendant's rank and influence in society, as

increased by his wealth, his talents, or his office, will af-
fect the extent of the injury he has inflicted, and are there-
fore proper subjects of inquiry. " So the plaintiff's position
in these respects is in like manner directly involved, and
will depend more or less upon his general character in
society.  The object of his suit is not simply to vindicate
his character on the point which has been assailed, by
showing that the charge is false, as well as malicious,
but to obtain such damages as will compensate, so far
as damages can compensate, for the injury done to his
feelings and to his reputation in general.  No tribunal
can properly determine the extent of that injury, or ap-
proximate the proper damage, without being apprized of
his true situation in life.  It was held by the Supreme
Court of North Carolina, in the case of *Sample* v. *Wynn*,
1 *Busbee* 319, not cited on the argument, that the plaintiff
was entitled to give evidence in chief of his general
good character in aggravation, it being a general principle
that good character ought to be presumed.  The cor-
rectness of this decision may be doubted, but I am en-
tirely satisfied that the defendant should be permitted to
show plaintiff's bad general character in mitigation of the
damages, upon the plea of not guilty, if he thinks proper
to do so.

If character be involved in such a case, it is not merely
character as to the matter of the charge, which is admit-
ted by that plea to be false, but character in general.  It is
true that a case may be imagined where a false charge,
affecting character in some particular matter, may be as
much, and possibly more injurious, and deserve heavier
damages, because of the plaintiff's want of a good char-
acter in some other particular; but of this the jury must
judge when the circumstances are fully before them.
Ordinarily it will be otherwise.  In general, a man who has
really lost the respect of his fellows, because of a tainted
reputation in any particular, will not suffer the same in-

jury in feeling or otherwise by a slander, and is not entitled to the same amount of damages as one who has hitherto borne an irreproachable name; A man who, because he is universally esteemed a liar, is not admitted to the association of the truthful and virtuous, cannot suffer so much injury by being falsely charged as a thief as one whose character had no such taint. A virtuous woman, moving in reputable society, will be very differently affected by the charge of larceny, from one whose associations are with the vile and profligate. And it is to be remembered that it is not the mere opinion of the witness that is to be sought, but his knowledge of the fact of the party's general character and reputation among his neighbors.

The argument most pressed on behalf of the defendant in error, in answer to this reasoning, was that one who has lost character in one particular has more need to vindicate it in others, and of course more claims on the law. But his right to the protection of the law is not questioned. His want of a good character is no justification of a slander. So far as a slander affects his feelings, and is injurious to him, he is entitled to complete indemnification, and if the damages may be legally punative, to more than compensation. The single question involved is, not his right to ample redress, but the true measure of redress in a case where it is the person only, and not property, that has been assailed. Who and what the person is must necessarily come in question. In such cases, there can be no certain measure of damages; the jury are the proper judges of their extent. To arrive at this intelligently, they must not only be informed of the circumstances attending the speaking of the slanderous words, but of the standing and position of the parties. Whatever rule of evidence may be adopted by the court, the jury will instinctively think of these things, and be influenced by them. If made a subject of direct evidence

upon the trial, they will be subject to the control and the comment of the court, instead of being, as otherwise they will be, a matter of speculation and surmise or of erroneous statement in the jury room.

Justices POTTS and VREDENBURGH concurred.

SAME case.—2 *Dutch*. 148; cited in *Brokaw* v. *N. J. R. & Trans. Co.* and *Campbell*, 3 *Vr*. 330.