### UNITED STATES v. KUHN (two cases).
### Civil Action Nos. 2539, 2540.

District Court, E. D. Pennsylvania.
Aug. 16, 1943.

---

Gerald A. Gleeson, U. S. Atty., and James P. McCromick, Asst. U. S. Atty., both of Philadelphia, Pa., for plaintiff.

T. Henry Walnut and Francis Fisher Kane, both of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

The defendants in these two proceedings for denaturalization (tried together) are husband and wife. In each case the complaint charges fraud in that the statements of intention to reside permanently in the United States and attachment of the principles of the Constitution of the United States in the petition for naturalization were false and that each defendant, when taking the oath of allegiance, fraudulently reserved allegiance to Germany.

Speaking of a proceeding of this kind, the Supreme Court of the United States said in the Schneiderman case, Schneiderman v. United States, 63 S.Ct. 1333, 1335, 87 L.Ed. ——, recently decided: "The Government seeks to turn the clock back twelve years after full citizenship was conferred upon petitioner by a judicial decree, and to deprive him of the priceless benefits that derive from that status. In its consequences it is more serious than a taking of one's property, or the imposition of a fine or other penalty. * * * in an action * * * for the purpose of depriving one of the precious right of citizenship previously conferred we believe the facts and the law should be construed as far as is reasonably possible in favor of the citizen." It seems plain to me that the Supreme Court was well aware of the danger—a very real one as will appear if some recent opinions of the District Courts be studied—that the limited objective and scope of the statutory proceeding for denaturalization might be entirely lost sight of and that it might develop into an instrumentality for something in the nature of a general purge directed against naturalized citizens deemed by the Government to be disloyal. This result can be avoided only by strict observance of the limits as to issues and measure of proof set by the Supreme Court.

The cases, both against and for the two defendants, naturally present many features in common and much that can be said as to the motives and intentions of either applies equally to the other.

Robert Kuhn came to this country in September 1923. He had served in the last war as an infantryman in the German Army, had been decorated and had been an American prisoner of war. He is 47 years old and has had only one trade, that of dental mechanic, at which he has worked steadily all his life. He is moderately intelligent, reticent and self-contained.

Mrs. Kuhn came here in 1925. She was of Polish birth and family, then a widow, having lost her first husband as a result of wounds received in the war. Her twin boys died in 1920, "of starvation" as she testified. She married her present husband shortly after her arrival here, and was naturalized in 1931. After her marriage she cooked for the Deutschhorst Country Club and later ran a tea room in Philadelphia for nine or ten years. She has had a good deal of illness and, in spite of her efforts to continue, was compelled to give up hard work in 1940. Her counsel describes her as "a resolute person with basic sound sense but a strong strain of emotional mysticism at times approaching hysteria." So far as my observation of her under cross-examination can be of any value, I should say that this statement is correct.

It is clear that a dominant note in the lives of both defendants has been a determination to live upon their own resources, at the base of which is the fear, not only of want but of becoming public charges. This may be largely accounted for by the severity of their struggle for existence in post-war Germany, but it is the trait which we call self-respect.

It is against this background, which I have inadequately outlined and, of course, may have misinterpreted, that the testimony of both defendants as to their motives in coming here and their intentions as to their future is to be considered. The testimony is substantially the same for both. Summed up, it is that they came to this country because they found it impossible for them to live in Germany, that

they expected to be able to make a decent living here, that they intended to remain here permanently and that this intention was the result of the belief that they could, in this country, establish themselves and free themselves from poverty and fear of pauperism.

■ The Government contends that the frank statements made by both to the effect that their remaining in the United States depended on whether they could make a livelihood here amount to admissions that their declarations of intention to reside here permanently were a fraud. The Government is entitled to a finding to the effect that their common intention was as stated and I make it, but I think that to predicate fraud upon that intention sets entirely too severe a standard. There is no branch of the law in which proof of the animus manendi calls for an unalterable determination to stay a lifetime in any particular place or country of residence, regardless of considerations of economic self-preservation. If that were what the law demands and if every naturalized citizen were as honest about his intentions as these defendants, I hesitate to think how many certificates could be cancelled.

■ So I do not think that it adds very much to the Government's case, upon this branch of it, that the defendants, in 1940, decided to go back to Germany to seek employment there. There is no satisfactory evidence that in so doing they also intended to give up their American citizenship, although it may well be that they would have done so had they found it necessary. They felt that they had been disappointed in their expectations of improving their condition here. After fifteen years the struggle appeared to be almost as hard and as fruitless as ever. Both of them were aging. The husband could see the end of his earning power not far ahead and the wife had already apparently reached hers. They had visited Germany in 1938 and found what appeared to them a prosperous country which offered employment at what looked like a highly satisfactory return.

■ Nor can want of attachment of the principles of the Constitution of the United States be found upon the ground that the predominating motive of the petitioner for naturalization is economic. Admiration for those principles in the abstract was not the force which brought these people to this country, any more than it has been with hundreds of thousands of other immigrants. They were not greatly concerned with forms of government or political ideologies. I have no doubt that they desired more than anything else an opportunity to achieve security by their own labor and were ready to accept the principles of any government which would give it to them.

As to the charge that the defendants fraudulently reserved allegiance to Germany, one cannot overlook another motive which unquestionably has governed their lives—a dread and hatred of war, born of their own bitter and tragic experiences. When, after the war broke out in Europe, they saw the direction in which this country was moving they both vigorously and perhaps violently protested against our policy. Whether or not some of the things they said transgressed the limits of propriety, they, in their own minds, were convinced that we were being misled by false propaganda, and undertook in their way to contradict it. I do not think that, in their case, what counsel for the Government describes as "favoring isolationism" in the pre-war period was a result of any desire to advance the interests of Germany. These people knew more about war and its consequences than most, and they thought that this country should and could avoid it.

Both the defendants testified that in taking the oath of allegiance they reserved no allegiance to Germany and that they are now and have been at all times loyal citizens and would fight if necessary for this Government. I doubt that anyone can read their testimony from beginning to end without being convinced that they are essentially truthful. In appraising its credibility, one or two things should be kept in mind. Robert Kuhn's English is good enough for ordinary purposes but it is evident that he is not always able to find the right word to express his thought and his anxiety to avoid being misunderstood makes his testimony, in parts, appear uncertain and ambiguous. He was interviewed and questioned by different Government agents five or six times prior to these proceedings, and Mrs. Kuhn eleven times. The interviews took the form of searching cross-examinations and, when the circumstances are considered, it is not surprising that some confusion and inconsistency appears in their answers.

The evidence offered by the Government to establish the falsity of their assertions in this respect does not, in my judgment, measure up to the standard set by the Supreme Court of the United States, as being clear, unequivocal and convincing. In particular I find that Robert Kuhn did not make the statement which is charged to him to the effect that his naturalization certificate was as worthless as toilet paper. No witness was produced who heard him say this and I accept his testimony that he did not.

I shall not review all the other items of the testimony in detail. Undoubtedly the defendants retained and still retain a deep affection for the land of their birth, and admired what its present government had done in improving (in 1938) the economic condition of its people. A person who takes the oath of allegiance to the United States may not retain any vestige of loyalty or allegiance to his native land, but I should not wish to say that he must uproot from his heart all affection or admiration for it. I do not find any approbation on their part of Hitler's war policy as distinguished from his domestic program, and they are not well enough versed in the philosophy of history to see how the two are related. As a test of her loyalty Mrs. Kuhn was asked, "You did not think that it was all right for England to declare war on Germany because it invaded Poland?" And her answer, I think, sums up her attitude and that of her husband: "I didn't like when Germany went into the war in the first place, because I hate war. I don't care who goes in the war, I suffer too much from war * * * whoever goes to war, invasion or not invasion, that is war, and I hate war, whoever started it * * *. I see these people suffering more than I can tell; I cannot explain."

I find as a fact that neither of the defendants fraudulently or otherwise reserved allegiance to Germany when they took the oath of allegiance to this country.

I further find, subject to the discussion in this opinion, that when they were naturalized they both intended to reside permanently in the United States. I further hold that there is no clear, unequivocal and convincing evidence that when they were naturalized they were not attached to the principles of the Constitution of the United States.

The statements of fact contained in this opinion may be taken as special findings of fact. I make the following conclusions of law:

(1) The burden is upon the Government to show fraud or illegality in obtaining citizenship by clear, unequivocal and convincing evidence.

(2) The Government has not done so in this case.

(3) The defendants are entitled to judgment.

Judgment may be entered accordingly.