**UNITED STATES v. KESSLER.**

**Civ. No. 10503.**

United States District Court, E. D. Pennsylvania.

April 25, 1952.

See also D.C., 10 F.R.D. 584.

Gerald A. Gleeson, U. S. Atty., Joseph G. Hildenberger, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

A. Harry Levitan, Philadelphia, Pa., for defendant.

CLARY, District Judge.

Reba Kessler (born Revke Kisilevsky in Chmelnick, Russia, on October 12, 1893) emigrated via Liverpool to the United States, arriving in Philadelphia, Pennsylvania, on December 15, 1909. She secured employment as a dress operator in a clothing factory in Philadelphia and has since her arrival been a resident of that City. On December 10, 1928 she declared her intention to become a citizen of the United States, and on September 24, 1931 executed an Application for a Certificate of Arrival and Preliminary Form for Petition for Citizenship. In answer to Question 29 of that form, she declared that she had never been arrested or charged with violation of any law of the United States or State or any City ordinance or traffic regulation. Thereafter, she followed the ordinary course to citizenship undergoing preliminary examinations before a naturalization examiner, was vouched for by two competent witnesses, and on October 23, 1931 filed in this Court her final Petition for Citizenship No. 110042. In her examinations before a Mr. Stevens, an experienced Naturalization Examiner, she was again orally questioned as to whether she had ever been arrested and again denied ever having been arrested. Her two witnesses,

one who had known her twenty years and another who had known her eight years, concurred in her statements that she had never been arrested for violation of any of the laws or ordinances above set forth. On the 29th day of January, 1932, relying upon the truth and good faith of the reports made by her in her Petition for Citizenship and preliminary examinations in connection therewith, and an oath of allegiance taken by her in open court on that day, this Court entered its order admitting her to citizenship in the United States and thereupon the Clerk of this Court issued to her Certificate of Naturalization No. 3435842 attesting to the grant of citizenship.

On September 6, 1949, Reba Kessler was called before the Immigration and Naturalization Service to be interrogated. Why her case was reopened does not appear in this record nor is it relevant, but it had come to the attention of the Department of Justice that she had been arrested 17 times between June 4, 1929 and February 19, 1930 by the Police of the City of Philadelphia. On each occasion she had been charged with "obstructing the highway". Following each arrest she had had a hearing before Dennis Fitzgerald, then a duly elected and qualified Magistrate of the City of Philadelphia, and on each occasion she had been discharged. When on September 6, 1949 she was asked by Samuel Horowitz, a Naturalization Examiner, whether the record of the Department of Public Safety, Bureau of Police, Philadelphia, showing the above arrests referred to her, her answer was "It's my name and address, but I don't recall being arrested so many times." When asked whether she recalled being asked about arrests at the time of her naturalization, her reply was that she didn't remember whether or not they asked that question during the process of her naturalization. Upon further questioning as to whether she had withheld knowledge of the fact from the Naturalization Bureau for fear that citizenship would not be granted her, her reply was "Maybe because I was discharged from each arrest, I didn't consider them an arrest." Certain other questions asked her were not answered upon advice of her attorney who had accompanied her to the interview.

On January 10, 1950, the present action was instituted asking for the revocation and setting aside of the Decree of Naturalization, cancellation of the Certificate of Naturalization issued to her, and praying that she be directed to surrender the said Certificate of Naturalization to the Clerk of this Court for cancellation. After preliminary motions to dismiss were disposed of, the case came on for trial on the 7th day of April, 1952.

At the trial, the fact that she had been arrested on 17 occasions between June 4, 1929 and February 19, 1930 was admitted by the defendant. It was further established by competent testimony that the defendant herein had not only answered untruthfully, in writing, the question in the application relating to arrests but further that she had been independently questioned by Mr. Stevens, the Naturalization Examiner, in her preliminary examinations and had again answered untruthfully that she had never been arrested.

The defendant in her case interposed a twofold defense. She contended first that the alleged crime of "obstructing the highway" was not a crime under any Federal statute or any of the laws of the Commonwealth of Pennsylvania. Further, that the only ordinance of the City of Philadelphia relating to obstruction of the highway involved a civil rather than a criminal penalty and, therefore, her answers in the application and at the preliminary examinations did not constitute a fraud upon the Government in that the crime with which she had been charged was a nonexistent crime for which she could not be validly arrested.

In the alternative and as a second defense, the defendant contended that even assuming that she had been actually arrested, she is a woman without formal education and while the answer given was incorrect, it was a normal and natural mistake of an uneducated person made with no intent to deceive the Government. She contended she honestly believed that because she was discharged on each occasion, her arrests were nullified and that made her answer, in her view, a truthful answer.

Defendant at the trial explained the circumstances of her arrests. There had been

a labor dispute at the factory at which she worked. She testified that on orders from her union, she joined the picket line with others and while picketing had at times been arrested. At other times, although not ordered to picket, she had been with the group of pickets at the establishment and because she was there in the group she had also been arrested. On 17 different occasions she was taken into custody by a Police Officer, placed with others in a patrol wagon, taken to a station house, had a charge placed against her, and after a hearing before Magistrate Fitzgerald, on each occasion she was discharged. Counsel for the defendant contends that since neither the laws of the Commonwealth of Pennsylvania nor the ordinances of the City of Philadelphia incorporate a separate and distinct offense of "obstructing the highway" (the charge on which she was slated), any alleged arrests made therefor were invalid and cannot be considered by the court in this case.

This leads to a consideration of what constitutes an arrest. American Jurisprudence, Volume 4, Section 4, defines an arrest generally as follows:

"An arrest, as the term is used in criminal law, signifies the apprehension or detention of the person of another in order that he may be forthcoming to answer an alleged or supposed crime."

In the same section in discussing how an arrest may be effected, there is also contained the following significant language:

"A peace officer or private person may arrest without a warrant a person who is committing a felony or who, on reasonable grounds, is suspected of committing a felony. *An officer or a private person may also arrest without a warrant for a breach of the peace committed in his presence."* (Emphasis supplied.)

Words and Phrases, Volume 4, at pages 234 and 235 states as follows:

"To constitute an 'arrest' four requisites are involved, a purpose to take the person into the custody of the law, under a real or pretended authority, and an actual or constructive seizure or detention of his person, so understood by the person arrested."

Section 112, Restatement, Torts, defines an arrest as follows:

"An arrest is the taking of another into the custody of the actor for the actual or purported purpose of bringing the other before the court, or of otherwise securing the administration of the law."

It will be clearly seen from the facts of this case that all of the elements of a legal arrest were present on each of the occasions (17 in number) defendant was taken into custody.

A review of the authorities indicates that from the earliest days of the Colony and thereafter in the Commonwealth of Pennsylvania, any willful and public disturbance has been considered a crime. Breach of the peace was one of the few exceptions to the law prohibiting arrests on the Lord's day in early Commonwealth history. Throughout the history of criminal law in Pennsylvania, a public disturbance or breach of the peace has been an indictable offense.

As late as 1950 in the case of Commonwealth v. Geuss, 168 Pa. Super. 22, 76 A.2d 500, the Superior Court has held that when clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order appears, the State has the power to prevent or punish such law infractions. This is merely a restatement of the principle set forth by Mr. Justice Roberts in Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213.

 The charge upon which this woman was arrested, and I find that she was legally arrested 17 times in 1929 and 1930, was clearly a breach of the peace upon which an arrest by a peace officer was legally warranted. The arrests were based on a charge which constituted an indictable offense and the defense advanced that they were invalid lacks any merit and will be dismissed.

 The second defense presents much more of a problem. If this defend-

ant at the time that she filled out her application and answered Mr. Stevens' questions honestly believed that her subsequent discharges had invalidated each arrest, in my opinion, that would be a complete defense to the Government's case. Such a defense would negate the charge of willful fraud upon which the Government bases its demand for cancellation of citizenship. The Government must prove that not only were the answers false but that the answers were made with knowledge of falsity and in a willful and deliberate attempt to deceive the Government as to a material fact in the naturalization process. See cases cited in Note 3 to the opinion of Chief Judge Biggs in the case of United States v. Doshen, 3 Cir., 133 F.2d 757. Citizenship once conferred should not be taken away in an action to cancel a certificate of citizenship on the ground of fraud without the clearest justification and proof. The evidence to establish the Government's case must be clear, unequivocal and convincing. United States v. Hartmann, D.C., 51 F.Supp. 394, United States v. Hugg, D.C., 51 F.Supp. 397, and United States v. Kuhn, D.C., 51 F.Supp. 400.

Examining the testimony in this case in the light of the applicable legal principles involved, the only defense interposed in this case by the defendant is that her union and the union's lawyer told her that she had done no wrong. Nowhere does she say that she was ever advised or had ever sought advice as to whether or not she had ever been arrested legally or otherwise. Miss Kessler came to the United States at the age of 16 years. She had been a resident of the United States and the City of Philadelphia for 19 years when she filed her declaration of intention to become a citizen. Between the time that she filed her declaration of intention and the preliminary form of application for citizenship, the events in question here occurred. During all the time she had been in the United States, a period of over 20 years, she had been regularly and gainfully employed. Her testimony as to lack of formal education and ignorance does not appeal to me. She was 38 years of age at the time she filed her Petition for Citizen-

ship. She is a self-contained, shrewd and intelligent person. I find that the answers she gave on her Petition for Citizenship and to the Naturalization Examiner were false answers, made knowingly, willfully and deliberately, and for the purpose of deceiving the Government. The Government has in this case presented testimony showing a clear fraud upon the Government in the process of a naturalization proceeding which warrants the relief asked for by the Government. As was well stated by Circuit Judge Healy in the case of Del Guercio v. Pupko, 9 Cir., 160 F.2d 799, at page 800:

> "Should the courts condone these deceitful practices the whole procedure preliminary to naturalization would be effectively undermined and the declared purpose of Congress frustrated."

And further:

> "Clearly, the perpetration of such a fraud upon the government in the very process of naturalization involves moral turpitude and exhibits the unfitness of the applicant for the high privilege of citizenship."

False and fraudulent statements or testimony made or given by an applicant in his petition for citizenship or at any stage of the naturalization proceedings constitute sufficient grounds for the cancellation of his naturalization certificate. 8 U.S.C.A. § 738, United States v. Goldstein, D.C., 30 F.Supp. 771.

Falsity of an oath taken by an applicant for naturalization constitutes fraud within the statute making fraud a ground for cancellation of a certificate of naturalization. Knauer v. United States of America, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500.

The facts necessary to a decision in this case are incorporated in the above opinion and, consequently, no separate findings of fact and conclusions of law will be filed. The Government is entitled to a Decree in its favor with costs against the defendant.

An appropriate order will be submitted.