**UNITED STATES of America,
Appellant,
v.
Walter Keay FRASER, Appellee.
No. 13985.**

United States Court of Appeals,
Ninth Circuit.
Feb. 16, 1955.

---

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., Milton T. Simmons, Acting District Counsel, Immigration & Naturalization Service, San Francisco, Cal., for appellant.

Walter Keay Fraser, in pro. per.

Before HEALY, BONE, and POPE, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal by the United States from an order of the district court admitting appellee to citizenship. In so ordering the court disapproved of a contrary recommendation which had been made by the examiner.

It appears from the examiner's report that in November of 1951, immediately preceding the filing of appellee's petition for naturalization, he had testified and had executed a sworn arrest affidavit wherein he stated that he had been arrested, fined, convicted, and put in jail as follows: "July 4, 1939, Los Angeles, California; drunk; 5 days." During the course of an investigation conducted subsequently it was learned that appellee had had the following additional drunk arrests to his credit: "December 31, 1930—PD, Pasadena, California, intoxication and St. 121 and W4–4—fined $25.00 or ten days, 30 days

and license suspended 90 days. February 7, 1941—PD, Los Angeles, California, drunk—no disposition. March 25, 1941 —PD, Pasadena, California, intoxication—$10.00 or five days. May 19, 1943 —SO, Modesto, California, drunk; five days work gang, fifteen days suspension."

At a further preliminary examination conducted in May of 1952 appellee admitted the additional arrests listed.

The record discloses that appellee was born in Dundee, Scotland, in 1893. In 1910 he lawfully entered the United States for permanent residence and has never since been elsewhere. He has a grown son, born in Illinois of his first wife, who died in 1924. In 1950 he married a second time, his wife being a citizen by birth. He and his wife live together in San Francisco. He is by occupation a machinist's helper.

The government disclaims any contention that the offenses for which appellee was arrested are of such a nature as to preclude a finding of good moral character. Admittedly they were minor slips of no consequence in themselves, and they occurred many years before the naturalization proceedings were begun. What is argued is that the failure to disclose them when questioned under oath amounts to knowing and willful concealment precluding a finding of good moral character. Among others, our decision in Del Guercio v. Pupko, 9 Cir., 160 F.2d 799, is cited as a case in point and as controlling here.

In the present instance the court interrogated appellee orally and inquired sharply into his answer to the arrest question. His reply was "Well, the record you have there, five arrests, they told me to answer what time but I couldn't tell when it was. I don't think it was even that. Instead of putting the word 'several' they put that."

The district judge was no doubt familiar with the holding in Pupko, supra, and with the principles applicable in such cases. He saw and heard the applicant for citizenship and, unlike ourselves, had opportunity to observe his demeanor and to gauge his sincerity and truthfulness.

He appears to have concluded from the reply given to his question that the applicant had not purposely withheld information from the Service, but that the examiner's report did not adequately reflect what was said. We are not disposed to overrule the implied finding, and accordingly the order below is affirmed.

POPE, Circuit Judge (concurring).

Both the opinion of Judge HEALY and that of Judge BONE adequately disclose the single issue sought to be raised by this appeal. It is my individual view that the record furnished by the appellant here is inadequate to warrant a reversal of the District Court.

The only testimony given in the court below which has been furnished as a part of this record is that of the appellee who had testified as follows:

"Now, Mr. Fraser, you can read and write English? A. Yes, sir.

"Q. I show you this affidavit and ask you if you signed it? A. I did.

"Q. And is the statement in there about your arrests true as to what you said at the time you filed the petition? A. So far as I could remember.

"Q. Well, you read it before signing? A. I did.

"Q. Now, I show you the form M-400. This is your preliminary application. Now, is that in your own handwriting? A. That's right.

"Q. In answer to the arrest question on that form you answered that you had never been arrested, but when you signed your petition you stated you had been arrested one time, July 4th, 1939, in Los Angeles, California, drunk, five days. That is what you told the Examiner and swore to there at that time, is that it? A. That is correct.

"Q. Now, is that record correct? A. Well, the record you have there, five arrests, they told me to answer what time but I couldn't tell when it was. I don't think it was even that. Instead of putting the word 'several' they put that."

The record does not contain either the affidavit or the form M-400 referred to in this interrogation, and after the witness had given the answer at the end of the foregoing testimony, the subject was dropped.

It is true that the examiner made findings and a report which referred to a sworn arrest affidavit (perhaps the one referred to in the testimony above) and which also referred to a preliminary examination "at which time the petitioner testified under oath, in part to the same effect as he stated in his affidavit." (Emphasis mine) I assume that the trial judge had an opportunity which has not been afforded this court to read the sworn statements of the petitioner to which the examiner referred. I have no idea how the preliminary examination was phrased, what opportunities for misunderstanding of questions asked there may have been, nor can I tell whether I would agree with the examiner in his conclusion that the petitioner deliberately and knowingly made false statements. Without an opportunity to read the affidavit or to read a transcript of the preliminary examination, I must attach to the trial court's judgment the usual presumptions of validity and regularity and therefore I concur in the result reached by Judge HEALY.

BONE, Circuit Judge (dissenting).

It seems to me that our decision in this case not only discredits, but virtually overrules, our decision in Del Guercio v. Pupko, 9 Cir., 160 F.2d 799. I agree with appellant that the only (and decisive) issue before us is whether appellee's false testimony (under oath) during his naturalization proceeding, is a bar to his naturalization. That such false testimony was given is crystal clear. About the only explanation tendered in the lower court was that appellee was ashamed to admit his various arrests (for intoxication) save and except in one instance.

An examination of our Pupko decision will reveal that it is on all fours with the instant case so far as concerns the controlling legal issue before us. That decision shows that the arrest which

Pupko concealed from the Naturalization Service was not for a major offense.

I suspect that by "walking around" our Pupko doctrine we will hereafter make a right to naturalization in this Circuit depend in no small measure upon how successfully an applicant appearing before a district court can explain away perjured testimony which concealed information which the government was clearly entitled to have during the administrative process.

The government has cited a long list of cases illustrating and approving the rule to which we gave full sanction in Pupko. I would adhere to that rule despite a natural sympathy for one whose several arrests (as the government frankly admits) would not necessarily bar him from naturalization. That aspect was present in the Pupko case. See also United States v. Kessler, 104 F. Supp. 434.

For these reasons I would reverse the order of the lower court.