IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1885.

RICHARD O'BRIEN, PLAINTIFF IN ERROR, v. ROBINA FRASIER, DEFENDANT IN ERROR.

1. In an action for malicious prosecution, the declaration charging injury to character, evidence on part of defence in mitigation of damages, tending to show the bad reputation of the plaintiff, is admissible.
2. The form of questions put to witnesses on this subject, considered.
3. In a suit of this kind, when the defence consisted in the circumstance that the defendant had intended to charge a different crime from that contained in his affidavit, which had been erroneously drawn by the magistrate, it is competent for the defendant to prove that the crime so intended to be imputed was true, to the best of his belief.

On writ of error.

The suit was for a malicious prosecution. The declaration set forth, in the usual form, the good character of the plaintiff, and that the defendant, intending to injure her in her fame and credit, without any reasonable cause made a charge of perjury against her, and so caused her arrest and imprison-

ment in the county jail, until she was discharged on account of no indictment having been found against her by the grand jury; that by means of these facts she was greatly injured in her said credit and reputation, and brought into public scandal, infamy and disgrace, &c. The plea was the general issue.

Argued at June Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff in error, *Stevenson & Ryle.*

For the defendant in error, *Z. M. Ward.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The bills of exceptions sent up with the writ in this case present three points for adjudication. These several propositions will be considered in the order in which they stand in the brief of the counsel of the plaintiff in error.

The basis of the suit was the arrest and imprisonment of the plaintiff on an affidavit made by the defendant, containing a charge of perjury, and which charge, it was asserted, had been made falsely, maliciously and without probable cause. The false swearing thus imputed to the plaintiff consisted in a statement made by her under oath, in a suit between herself and the defendant, that a certain bank-book which she had turned over to the defendant contained a credit of a certain sum due from the bank to her. Upon the strength of this affidavit a justice issued a warrant and the plaintiff had been arrested and imprisoned until she was discharged in consequence of the grand jury failing to find an indictment against her. At the trial of the cause it was admitted by the counsel of the defendant that the statements of this affidavit were altogether untrue, and that there had been no probable cause for the arrest and imprisonment of the plaintiff on that particular charge, and the defence was that although he signed the affidavit upon which the warrant issued, he did such act by mis-

take ; that the charge which he intended to make was of a
different character ; that what he meant to depose was that the
plaintiff, on the trial referred to, had sworn falsely with respect
to a certain amount of cash she had given him, and not, as it
stood in his affidavit, that she had falsified touching the con-
tents of the bank-book which she had transferred to him.   In
this aspect the defendant was permitted at the trial, when he
was on the witness-stand, to testify that he did not intend to
charge in his affidavit that the plaintiff swore falsely as to the
amount of money placed to her credit in her bank-book, but
that she swore falsely with respect to the amount of cash she
had paid to him, and that the magistrate before whom he had
laid his complaint, from a misconception of his statement, in-
serted the former instead of the latter accusation, and that he
had ignorantly taken the oath•in that form.   This offer of
proof was rejected by the court, and, in effect, the defendant
was not allowed to prove that he believed that the plaintiff
had perjured herself in her allegation of the amount of cash
she had paid to him, and that his purpose had been to charge
her with that offence.

The circumstances of the case are peculiar, but upon reflec-
tion I am satisfied that the testimony thus shut out was
admissible.   It is not regarded as legal on the ground stated
in the brief of counsel, which was that it helped to support
the defendant's statement that he had not meant to make the
particular accusation contained in his affidavit, for such a col-
lateral issue could not be interpolated merely by way of con-
firmation, but it is conceived that it was legitimate evidence, as
it was an essential part of the defence interposed.   The case
was in this situation : The defendant's affidavit had been pro-
duced, and it had been proved that its crimination was with-
out foundation, and without color of foundation.   This the
defendant admitted, and he thereby confessed that he had made
a false charge of crime against the plaintiff, resting on no
probable cause, and that by reason of such improper action on
his part she had been arrested and imprisoned.   If the case
had been closed at this point, the jury would have been con-

strained, in right reason, to find not only that the prosecution had been founded in falsehood, to the knowledge of the defendant, but that it was consequently malicious, and thus his liability would have ensued. In this posture of affairs the defendant could not controvert the fact that the charge that he had in point of fact sworn to was false and without foundation, but it was still open for him to disprove the inference that would have necessarily resulted from the admitted facts that he had put the law in motion against the plaintiff from a malicious motive. The existence of an illegal intention in this action was as essential to its support as were the falsity of the crimination and the absence of reasonable ground for a belief in its truth. In order to manifest a legal motive for his conduct, the offer was made to the effect that the charge that he had meant to make was one touching a different matter, and that such latter inculpation was true according to his belief. It will be observed that if that had been the true attitude of the defendant, that is, reasonably believing that the plaintiff had committed the crime of perjury in the particular sought to be shown, he had taken steps, in behalf of public justice, to call her to account, and in that course of law a mistake in the affidavit had supervened, it is clear that, no matter how negligent he had been, his motive had not been illegal. Proof of the naked fact that one charge had been substituted for another would not, of itself, have been a defence to the action, because it would not have exhibited a legal motive for the defendant's conduct. It would have been consistent with such a state of proof that he had been actuated in the affair either by a legal or illegal inducement to the course taken. In order to test the principle, suppose the defendant had proved that he had intended to charge a crime upon the plaintiff, which he knew she had not committed, but that by mistake he had charged a different offence, and had caused her imprisonment for it, would such proof have been a defence to this action? Such a contention, very plainly, would not have availed. The defendant could not escape responsibility by the subterfuge that the unintended and not the intended falsehood had

worked the plaintiff injury. On this side of the case the question is whether the defendant's motive was illegal with respect to the course of law leading to the arrest of the plaintiff, rather than to the particular mode of procedure that was adopted. No reason suggests itself why the doctrine should be made a part of the legal system that when a person has been subjected to the suffering and ignominy to which the plaintiff was subjected, such person is to be without redress, if, through the inadvertence or negligence of the prosecution, a mistake has been fallen into with respect to the particular charge which it was intended to make, no matter how improper or vicious the purpose of such prosecutor may have been. As the case stood before the court below, it had appeared that the charge made was false ; that there had been no reasonable cause for believing it to be true; and the conclusion is that unless the defendant could show that his motive for putting the prosecution on foot was not malicious, that is, was not such a motive as the law prohibited, the action was sustained.

There was error, therefore, in rejecting the testimony in question.

The second objection urged against the proceedings at the trial also arises from the exclusion of proofs offered by the defendant.

The defendant, desirous, apparently, to disparage the general reputation of the plaintiff in point of morals, asked of a witness the following question : " Do you know the reputation of Mrs. Frasier, in the city of Paterson ? " This interrogatory in the form stated was overruled, the court directing the counsel to make the inquiry more specific. The following interrogatories were then propounded and were successively overruled, to wit : " Are you acquainted with the general reputation among her neighbors and acquaintances, of the plaintiff ? " " Do you know whether the plaintiff has been charged with crime prior to the complaint which Mr. O'Brien made against her ? " " Are you acquainted with the general reputation which the plaintiff had amongst her friends and

neighbors prior to the time that Mr. O'Brien made his charge against her?" " Do you know whether, prior to the charge that Mr. O'Brien made against her, the defendant had obtained and acquired the good opinion and credit of her neighbors?" " Are you acquainted with the reputation which Mrs. Frasier had prior to Mr. O'Brien's charge against her for virtue?"

With respect to these inquiries two topics are discussed in the briefs of counsel, first, whether the general character of the plaintiff in this action was open to attack, and, second, this being answered in the affirmative, whether the interrogatories, or any of them, which were addressed to the witness, were in due form.

Touching the first subject, it is conceived that when a plaintiff in a suit for malicious prosecution founds his action in part on an injury done to his character by such prosecution, the legal rule is quite settled that he thereby puts his general character in issue. As long ago as the case of *Savile* v. *Roberts*, reported in 1 *Ld. Raym.* 374, Lord Holt, in defining the damages which will support a suit of this character, states as his first class those instances where the only injury consists in the " damage done to a man's fame, as if the matter whereof he be accused be scandalous." It would seem to follow, therefore, that whenever the action is used as a means of reparation for an injury, in whole or in part, done to his character, the plaintiff in such procedure must stand in precisely the same attitude that the actor in an action for libel or slander assumes, and in the latter class of cases it has been adjudged in this court, that the general bad character of the plaintiff at the time of the alleged grievance is admissible on the part of the defence in mitigation of damages. The case indicated is that of *Sayre* v. *Sayre*, 1 *Dutcher* 235, in which Chief Justice Green reviews the English and American decisions on this subject, and finally declares the class of evidence in question is admissible, in mitigation of damages, on the broad ground " that it cannot be just that a man of infamous character should, for the same libelous matter, be entitled to equal damages with the man of unblemished repu-

tation." It is also to be noted, in this connection, that in his discussion of this subject the accurate jurist just mentioned, evidently considered the action for malicious prosecution based on an injury to character, as *in pari materia* with the action for libel or slander, and refers to both procedures, throughout his opinion, as resting on the same general principle. And indeed it does not seem to be deniable that a malicious prosecution for an indictable and odious offence is a libel to which is, in some cases, superadded illegal imprisonment and the loss of property, so that it would be quite abnormal for the same court to declare that in the actions for libel the plaintiff's character is in issue, but in actions for malicious prosecutions it is not in issue.

And the decision just referred to appears to accord with the great weight of authority, as will plainly appear by a reference to any of the leading text-books treating of the subject. 1 *Whart. Ev.*, § 54; *Bacon* v. *Towne*, 4 *Cush.* 217; *Fitzgibbon* v. *Brown*, 43 *Maine* 169.

Evidence as to the bad moral character of the plaintiff was, it is considered, plainly admissible in mitigation of damages. Whether such testimony would have been proper, if such issue had been presented on the facts as a circumstance going to make up a reasonable cause for the conduct of the defendant, is a question not now *sub judice.*

With regard to the other branch of this subject, it seems to me that the form of some of the questions put to the witness were unobjectionable. It was not merely the bad character of the plaintiff on the point in which it had been villified that was subject to discussion, but her character generally with respect to morals. That the inquiry has this scope was fully considered and declared in the case just referred to of Sayre *v.* Sayre. Consequently the interrogatory thus phrased, "Are you acquainted with the general reputation which the plaintiff had amongst her friends and neighbors prior to the time that Mr. O'Brien made his charge against her?" would seem to have been all that the rules of practice require. According to common usage the phrase refers to the general moral character

of the person referred to, and it seems to savor of hypercriticism to suggest that a question thus framed embraces other than moral traits of character. It would not be easy to put the inquiry in a shape at once succinct and yet comprehensive, so as not to be open to such a subtle objection, for the line that separates what is immoral from what is indecorous is oftentimes exceedingly indefinite and indistinct. It will be found by referring to the language of the judges as contained in the reports, that the expression " bad character and general reputation " is constantly used to signify character and reputation with regard to morals. And if this matter were in doubt, the other question which was propounded and overruled, in the words " Are you acquainted with the reputation which Mrs. Frasier had, prior to Mr. O'Brien's charge against her, for virtue? " was sufficiently specific, for the inquiry necessarily tested the knowledge of the witness with reference to the general moral standing of the plaintiff in public estimation.

The result is that these two questions were improperly overruled.

The third and last exception relates to the rejection at the trial of the following question put by the counsel of the defendant to one of the witnesses, to wit: " Do you know whether, prior to Mr. O'Brien's charge against this woman [the plaintiff,] she was living in adultery with Mr. ——? "

It is plain that the judicial course on this subject was correct. Particular criminal acts, as a general rule, cannot be set up either against a party or a witness. If the rule were otherwise, innumerable issues, incapable of all reasonable trial, would be raised in the progress of the ordinary suits. It is not known that any case warrants the introduction of such a species of testimony.

Let the judgment be reversed on the grounds above defined.