**UNITED STATES of America,**
**Plaintiff,**

v.

**Carlos Ormanita UDANI, Defendant.**
**No. 25773–SD.**

United States District Court
S. D. California, S. D.
May 17, 1956.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., Howard R. Harris, Asst. U. S. Atty., San Diego, Cal., for plaintiff.

Vincent P. DiGiorgio, DiGiorgio & Davis, Bakersfield, Cal., for defendant.

WEINBERGER, District Judge.

Pursuant to request of counsel the Court states its conclusions in connection with the order made in open Court on April 9, 1956 denying defendant's motion to dismiss.

An indictment was returned against the defendant February 2, 1956, charging him with having violated Section 1425 of Title 18 U.S.C.A. (knowingly procuring or attempting to procure naturalization contrary to law and procuring or attempting to procure naturalization when not entitled thereto) and with having violated Section 1015 of Title 18 U.S.C.A. (knowingly making false statement under oath in naturalization proceeding).

The indictment recites:

"The Grand Jury charges:
"Count One
"(U.S.C., Title 18, Sec. 1425)

On or about July 18, 1952, in San Diego County, within the Southern Division of the Southern District of California, Carlos Ormanita Udani did knowingly apply for, obtain and procure his own naturalization, fraudulently and contrary to the Naturalization Act of 1940 as amended, as set forth below. Said defendant was not then and there entitled to be naturalized, in that the Petition for Naturalization of said defendant contained fraudulent statements, and did not meet the statutory requirements for said Petition, as set forth below:

"1. Said defendant did knowingly and falsely state in said Petition for Naturalization that his then place of residence was San Diego County, California; actually, as said defendant well knew, said defendant was then a resident of Kern County, California.

"2. That said defendant did knowingly and fraudulently present as his verifying witnesses, required by law, two persons as follows:

"Marciano Padua and Petronilo Laconsay. That said persons knowingly made false statements by way of affidavit in said Petition for Naturalization, in that said persons stated that said defendant had continuously resided in San Diego County, California, up to the date of said Petition for Naturalization, for a period in excess of six months. That said statements were false and were known by said persons to be false. That at said time said defendant knew that said persons had made said false and fraudulent statements in said Petition and were not credible witnesses. Actually, said defendant had not resided in San Diego County for said period but in fact had resided in Kern County, California.

"3. That said defendant did give money to one John B. Scott, then Naturalization Examiner, Immigration and Naturalization Service, with the intent to influence the decision of said John B. Scott as to the matter of the naturalization of said defendant, which matter was then pending before said John B. Scott in his official capacity.

"Count Two
"(U.S.C., Title 18, Sec. 1015)

"On or about June 17, 1952, in San Diego County within the Southern Division of the Southern District of California, Carlos Ormanita Udani did petition for naturalization, Petition No. 16766, in the Superior Court of the State of California in and for the County of San Diego, a court of record in the State of California, pursuant to the Naturalization Act of 1940 as amended,

"As part of said naturalization proceeding, said defendant did take an oath administered by a deputy clerk of said Court that he, said defendant, knew the contents of said Petition for Naturalization and that the same were true to the best of his knowledge and belief. That at said time and place, and contrary to said oath, said defendant did knowingly make a false statement as to a material matter in said Petition for Naturalization in that, in said petition, said defendant stated that his then place of resi-

dence was San Diego County, California; actually, as said defendant well knew, said defendant was a resident of Kern County, California."

The defendant has moved to dismiss on the ground, firstly, that no offense is stated because no material falsehood is alleged and secondly, that the prosecution of the offense is barred by the statute of limitation, in that the lengthening of the statutory period after the date of the alleged offense is, as to the defendant, unconstitutional.

■ For the purposes of this motion we assume the matters set forth in the indictment are true, and that the alleged statements were made as charged.

■ It is our understanding that the defendant urges that the misrepresentation as to residence was not a false statement as to a material fact unless the statement was capable of influencing the tribunal which naturalized the defendant to reach a different conclusion than it would have reached had the true fact been stated. Defendant argues that the defendant's statement that he resided in San Diego County, when he resided in Kern County would not have influenced the naturalizing Court because the Superior Court of the State of California, in and for the County of San Diego, has jurisdiction to naturalize not only residents of San Diego County, but those of any other county in the State of California, within the meaning of Section 301(b), 8 U.S.C.A. § 701, 1942 edition *, of the Nationality Act of 1940.

Plaintiff urges that the alleged representation as to residence was material in that the Superior Court of San Diego County had no jurisdiction to naturalize a resident of Kern county; that the Nationality Act of 1940, Section 307, 8 U.S.C.A. § 707, 1942 edition †, required that the applicant must have been, for five years immediately preceding his naturalization, a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States; that there also were certain prohibitions against naturalizing persons who were members of subversive organizations or who had deserted from the United States Army, and so forth; that it was further provided, in Section 309(a), 8 U.S.C.A. § 709, 1942 edition **, that there must be included in the petition for naturalization the affidavit of two credible citizen witnesses, regarding the residence and good moral character and attachment to the principles of the Constitution, etc. of the applicant; that the regulations of the Naturalization department provided that the residence of the applicant must be established at the hearing on the petition by the testimony of two credible witnesses; that the regulations further provided in detail for investigation of applicants for naturalization and their witnesses to be made by the Immigration and Naturalization Service.

In United States v. Di Blasi, D.C.N.J., 1 F.Supp. 28, the Court held that a misrepresentation by petitioner of his place of residence, knowingly made, was fraud justifying the cancellation of his certificate.

In United States v. Genovese, 133 F. Supp. 820, the New Jersey District Court, citing the Di Blasi case, and in disposing of the defendant's contention that undisclosed facts could not be considered material and the non-disclosure fraudulent unless their revelation would have justified refusal of citizenship, quoted certain regulations of the Department of Immigration and Natural-

---

* Now Immigration and Nationality Act, § 310, 8 U.S.C.A. § 1421.

† Now Immigration and Nationality Act, § 316, 8 U.S.C.A. § 1427.

** Now Immigration and Nationality Act, § 335, 8 U.S.C.A. § 1446(f).

ization, 133 F.Supp. at page 824 of its opinion, in part as follows:

"'The witnesses shall be questioned to develop not only their own credibility and competency, but the extent of their personal knowledge of the applicant's residence, moral character, and attachment to the principles of the Constitution. Search will be made of appropriate court and other records in establishing the qualifications of the applicant and the witnesses.'"

At page 828, of 133 F.Supp., it was observed:

"Although the arrests and convictions in themselves might not have provided sufficient basis for a denial of citizenship, certainly their disclosure would, or at least could, have motivated a more extensive investigation of defendant's past, especially within the five-year period prior to his petition, which investigation might have uncovered facts sufficient to require a refusal of naturalization. To that extent they were material and their nondisclosure under the circumstances attendant was fraudulent, and therefore constitutes a valid basis for revocation of citizenship. * * *

"Under defendant's hypothesis he would put a premium on falsehood, for an applicant with arrests more than five years previous to filing his petition for naturalization could, with impunity, lie about their existence and thus escape the likelihood of more than the usual cursory investigation of his conduct during the critical five-year period."

The Court further held 133 F.Supp. at page 829, citing United States v. Corrado, D.C.E.D.Mich.1953, 121 F.Supp. 75, that the very act of falsifying the facts indicates that at the time the defendant did so he was not a person of good moral character and stated:

" * * * At the same time before granting the right the plaintiff is entitled to frank, honest and un-. equivocal information from the applicant for the privilege of citizenship which is likely to throw light upon his qualifications or disqualifications for it."

In Del Guercio v. Pupko, 9 Cir., 1947, 160 F.2d 799, the applicant had stated she had never been arrested or charged with the violation of any law; an investigation developed that the applicant had been arrested at Palm Springs on a morals charge and for having registered at a hotel under a name other than her own in violation of a city ordinance. At the hearing on naturalization she admitted the charges, and explained she was a victim of circumstance; the District Court found the Palm Springs incident did not adversely reflect on her morals and granted her application for naturalization. The Director appealed, and the Court of Appeals, while agreeing that the Palm Springs incident did not reflect adversely on the morals of the applicant, held that her falsehood was another matter. The Court observed, 160 F.2d at page 800:

"Section 307(a) of the Nationality Act of 1940, 8 U.S.C.A. § 707(a) so far as pertinent, provides that no person shall be naturalized unless for at least five years preceding the date of filing his petition for naturalization he has resided continuously within the United States, and during all that time 'has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.' Section 333(a) of the Act, 8 U.S.C.A. § 773(a), empowers the Commissioner to designate members of the Service to conduct preliminary hearings upon petitions for naturalization and to make findings and recommendations thereon to the court. The examiners are authorized to take testimony concerning any matter touching the admissibility of applicants, and to administer

oaths to a petitioner and his witnesses. The submission of the form signed by appellee here, as well as the carrying on of oral examinations, are provided for by regulation as steps in these preliminary inquiries. Further, § 346(a) (1) of the Act, 8 U.S.C.A. § 746(a) (1), makes it a felony for any alien or other person, whether or not an applicant for naturalization or citizenship, knowingly to make a false statement under oath, either orally or in writing, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization or citizenship.'

"Appellee's grave fault lay in her falsification of a matter concerning which the government was obviously entitled to be informed. Her professed purpose was, not to make a disclosure of the incident at some later and supposedly more opportune stage, but merely to attempt an explanation in the event the Service should chance to stumble upon the truth. There is nothing unique in such a motive; doubtless much the same idea animates every aspirant for citizenship who gives an untruthful answer to a material inquiry. Should the courts condone these deceitful practices the whole procedure preliminary to naturalization would be effectively undermined and the declared purpose of Congress frustrated. Cf. Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304 [90 L.Ed. 1500]; United States v. Goldstein, D.C., 30 F.Supp. 771, 773. Clearly, the perpetration of such a fraud upon the government in the very process of naturalization involves moral turpitude and

exhibits the unfitness of the applicant for the high privilege of citizenship. It follows that the order below must be reversed."[1]

In Stevens v. United States, 7 Cir., 1951, 190 F.2d 880, the Court held that a false statement knowingly made by an applicant for naturalization in the course of such proceeding constituted a violation of Section 746(a), (d) of Title 8 U.S.C.A. and was a felony, and constituted ground for denying an application for naturalization, notwithstanding that the information concealed would not, standing alone, afford a proper basis for the denial of the petition.

We hold that the false statement as to residence was a falsehood as to a material fact, and while we do not feel it is necessary to decide whether the disclosure of applicant's residence in Kern County would have caused a denial of his citizenship, it well might have done so. Certainly a Superior Court of San Diego, having before it an application of an alien residing in Kern County might have inquired why the petition was filed in San Diego County instead of the County of applicant's residence. Such inquiry might have led to the disclosure of the payment of money by the alien to the local naturalization examiner in an attempt to influence his decision. Too, we do not know what an inquiry of the police records of Kern County would have disclosed, nor what an investigation of the neighborhood in which the applicant actually lived would have produced.

We do not find it necessary to decide whether the representations as to residence were material as bearing on the question of jurisdiction of the San Diego Superior Court. The elements of

---

1. Cited with approval, United States v. Docherty, 5 Cir., 212 F.2d 40 (note); United States v. Accardo, D.C., 113 F. Supp. 783, affirmed on opinion of District Court, 3 Cir., 208 F.2d 632, certiorari denied 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098; United States v. Corrado, D.C., 121 F.Supp. 75; United States v. Title, D.C., 132 F.Supp. 185; Distinguished in United States v. Fraser, 9 Cir., 219 F.2d 844, and United States v. Kessler, 3 Cir., 213 F.2d 53, on the ground government failed to prove intent to deceive.

materiality and falsity fully appear without a finding on this issue.

In considering the objection that the statute fixing the period of limitations for prosecution is unconstitutional as to this defendant, it is noted that the period was three years at the time the offense is charged to have been committed. Before the expiration of such period, but after the commission of the crime, Section 3282 of 18 U.S.C.A. was amended, and the period limiting the time for prosecution was extended. The offense charged was committed within the period specified in the amendment.

We find no merit in this contention of defendant. Falter v. United States, 2 Cir., 23 F.2d 420, certiorari denied 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003.